FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JAN 28 P 12: 23

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT G. MOORE, #402576        *
         Plaintiff,
v.                              *   CIVIL ACTION NO. JKB-13-128

WILLIAM O. FILERT               *
SCOTT S. OAKLEY
DAYENE CORCORAN                 *
OFFICER A. JOSE
         Defendants.    *
                      *****

## MEMORANDUM

### I. BACKGROUND

This 42 U.S.C. § 1983 action, filed on January 10, 2013, invokes this court's civil rights jurisdiction under 28 U.S.C. § 1343. The complaint alleges that defendants[1] were aware of plaintiff Robert G. Moore's ("Moore") lengthy stay in Maryland Correctional Institution in Jessup ("MCIJ") segregation commencing on September 28, 2012, and violated his right to a "prompt and practible" court hearing. Moore claims that he suffered migraine headaches and severe mental anguish and emotional stress due to the conditions of his segregation assignment. He states that he remained on segregation for 62 days until December 3, 2012, and due to retaliation from MCIJ Warden Dayena Corcoran, he was placed back on segregation on December 28, 2012, and transferred far away from his family to the Division of Correction western Maryland complex in Cumberland. ECF No. 1.

Moore further complains that his administrative remedy procedure ("ARP") grievance was denied and he could not file an appeal of the initial ARP decision because the MCIJ

---

[1] By separate Order the Clerk shall be directed to modify the docket to reflect the correct spelling of the names of defendants William O. Filbert, Dayena Corcoran, and Olabisi Ajose.

segregation unit officers would not give him forms. He claims that he wrote to the Inmate Grievance Office ("IGO") but did not receive a response. ECF No. 1. Moore seeks changes to the state correctional system regarding segregation assignment and compensatory damages for the alleged violation of his rights.

On July 3, 2013, defendants filed a motion to dismiss or for summary judgment which has been treated as a motion for summary judgment. ECF No. 18. Moore filed an opposition response. ECF No. 20. The undersigned has examined the record and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. July, 2011). For reasons to follow, defendants' motion will be granted.

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III. ANALYSIS

According to defendants, on September 28, 2012, Moore received an infraction at MCIJ for refusing housing[2] and was placed in the segregation unit pending a disciplinary adjustment hearing. ECF No. 18, Ex. 1 at Ajose Decl. & Ex. 2. Defendants maintain that during this time period there was a backlog of infractions pending disciplinary hearings due to "technical difficulties with the video conferencing equipment." *Id.*, Ex. 1. Moore's disciplinary hearing was held two months later on November 30, 2012. Defendants assert that the adjustment was heard as soon as MCIJ could accommodate the hearing and the reasons for the delay were placed on the record pursuant to the requirements of the Code of Maryland Regulations. *Id.*, Ex. 4. Defendants state that Moore was offered, but refused, an informal resolution of the infraction and the case was required to proceed to a formal disposition before an adjustment hearing officer. Defendant Ajose affirms that Moore's adjustment hearing was held in accordance with all applicable policies and procedures. *Id.*, Ex. 1. Moore was found guilty of the infraction and sanctioned with 10 days of cell restriction. He was asked but failed to respond to questions regarding the harm he suffered on administrative segregation and was credited with time spent on segregation. ECF No. 18, Ex. 4 at pgs. 3-4. The sanction was approved at the Warden's level and Moore was served with that notice.

---

[2] At his adjustment hearing Moore claimed that he refused housing due to gang activity in the housing unit. ECF No. 18, Ex. 4.

3

The record of Moore's segregation confinement shows that he received out-of-cell activity and showers. The record further shows that during his 62-day segregation assignment he was afforded the opportunity to use the telephone on at least 8 occasions and twice had a visitor. *Id.*, Ex. 6. Moreover, the medical record provided to the court shows that during his 2012 segregation assignment, Moore complained of migraines and mild headaches in mid-November 2012.[3] *Id.*, Ex. 15 at pgs. 18 & 60-63. He was prescribed a migraine medication. No further complaints of headaches or migraines are noted in the record.

Defendants affirm that administrative remedy procedure ("ARP") grievance forms are available in the MCIJ segregation unit and there is no record that Moore filed an ARP regarding his segregation assignment or its conditions. *Id.*, Exs. 16 & 17 at Johnson & Fulgham Decls. The Executive Director of the Inmate Grievance Office ("IGO"), however, acknowledges that Moore filed an appeal with the IGO from his November 2012 guilty finding at his adjustment hearing, but failed to properly exhaust the remedy of appeal when he did not provide the IGO the information it requested. *Id.*, Ex. 19.

Defendants state that on January 2, 2013, Moore was transferred from MCIJ to the Western Correctional Institution ("WCI"), a medium security facility. They maintain that the reasons for the transfer are not apparent, but that said transfer was appropriate given Moore's medium security level and the absence of enemies at WCI. *Id.*, Ex 7 at Daugherty Decl. & Exs. 8-9. He was placed on WCI administrative segregation "pending investigation" to determine proper housing given his recent transfer from MCIJ. ECF No. 18, Ex. 9 at Yates Decl. Later it was decided that there was no need to continue administrative segregation housing and Moore

---

[3] The record also reveals that eight months prior to his segregation assignment, in January of 2012, Moore complained about headaches and sought to have his "migraine" medication refilled. ECF No. 18, Ex. 15 at pgs. 17 & 23.

4

was to be returned to general population after April 26, 2013. *Id.*, Ex. 10. On May 2, 2013, however, Moore received an infraction for rule violations (refusing a direct lawful order and housing). *Id.*, Ex. 11. He received 30 days' disciplinary segregation on May 10, 2013. Defendants state that Moore was placed on administrative segregation on May 16, 2013, after the prison received numerous telephone calls from family stating that he had informed them that he was in danger. *Id.*, Exs. 12 & 13. As of July 2013, Moore was assigned to administrative segregation at WCI pending investigation into whether his safety would be in jeopardy if housed in WCI general population. *Id.*, Ex. 11.

In his opposition response, Moore claims that he was transferred after he filed this suit against Warden Corcoran in December of 2012. ECF No. 20. He further asserts that the actual reason for the delay of his hearing was not placed on the record at his disciplinary hearing and the court needs to hear the recordings of the adjustment hearing to "find out the whole truth." Moore alleges that inmates, who received infractions after him, received their hearings before he did. Finally, he contends that he continues to complain about migraine headaches while housed at WCI and claims that he experienced a lack of fresh air and sunlight while housed in MCIJ segregation. *Id.* The court shall examine Moore's claims *seriatim*.

**Segregation Housing.**

Moore complains that he was housed on MCIJ segregation for 62 days while awaiting adjustment review and suffered migraine headaches from segregation conditions. He has failed to articulate a claim. Placement on segregation alone is not an "atypical and significant hardship." *See McNeill v. Currie*, 84 F. App'x 276, 277 (4th Cir. 2003); *Beverati v. Smith*, 120 F.3d 500, 502–04 (4th Cir. 1997) ("confinement to administrative segregation does not implicate a liberty interest."). The record shows that Moore received showers, out-of-cell recreation,

5

visits, and was able to make telephone calls while on segregation during September, October, and November of 2012. He has failed to show how his confinement was significantly more onerous than conditions on general population. Nor has he shown that he suffered a serious injury from that assignment as the medical record shows that he complained about headaches and had been prescribed migraine medication at least eight months prior to his segregation confinement.[4]

**Adjustment Hearing Process**

Moore seemingly complains that the delay in his receiving a prompt adjustment hearing violated the rules and regulations set out by the Maryland prison administration. Violations of state law or regulation, however, do not provide a basis for a due process violation. In order to obtain relief pursuant to 42 U.S.C. § 1983, a plaintiff must prove two elements: (1) a deprivation of a right secured by the Constitution and laws of the United States, and (2) a deprivation of that right by a defendant acting under color of state law. The alleged violation does not implicate a constitutional right. Thus, his claim is insufficient as a matter of law to support a claim for relief under § 1983. *See Riccio v. City of Fairfax, Va.*, 907 F.2d 1459 (4th Cir. 1990) (violations of a procedure not required by the Constitution do not state a due process claim); *Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992) (§ 1983 protects against constitutional violations, not violations of prison rules). Where in this case, Moore was offered, but refused, an informal disposition of his adjustment, did not articulate the harm caused by his more than 60 days on administrative

---

[4] Moore claims that his segregation confinement caused him to experience emotional trauma and stress. The Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997). Plaintiff has not made a showing of physical injury connected to any alleged Eighth Amendment deprivation.

6

segregation, and received all other protections to which he was entitled,[5] he has failed to articulate a violation of a due process right.

**Conditions of Confinement on Segregation**

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *Strickler*, 989 F.2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993) (exposure to environmental tobacco smoke). The key in determining whether prison conditions become cruel and unusual requires examination of the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

---

[5] Although inmates do retain rights under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of Good Conduct Time, he is entitled to certain due process protections, i.e., advance written notice of the charges, written statement of the evidence relied on and the reasons for taking any disciplinary action, a hearing where he is afforded the right to call witnesses and present evidence, a written decision, the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues, and an impartial decision-maker. *See Wolff*, 418 U.S. at 564-71. In this case *Wolff* is inapplicable as Moore suffered no loss of diminution time.

While on administrative segregation pending his adjustment hearing, Moore received showers, out-of cell recreation, visitors, and access to the telephone. He has failed to expound on or describe the deprivations he experienced or injuries he suffered from his 62-day segregation assignment.

**Administrative Remedy Procedure Process**

Whether or not Moore was denied ARP appellate forms, the law in this Circuit dictates that no constitutional entitlement to grievance procedures or access to such procedures is created merely because such procedures are voluntarily established by a state. *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, Moore's issue with his access to grievance forms on the MCIJ segregation unit simply does not implicate a constitutional claim.[6]

**Transfer to WCI**

Moore complains that his January 2, 2013, transfer from MCIJ to WCI was retaliatory. Aside from his self-serving, conclusional statement, he offers no facts or evidence in support of his claim that MCIJ Warden Corcoran subjected him to a retaliatory transfer, *see Adams*, 40 F.3d at 74 (claim of retaliation is not supported by bare allegations), and he has failed to provide facts showing that the exercise of his constitutional right was a substantial factor motivating the retaliation.[7] *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). Further, Moore was transferred between medium security facilities. He has no constitutional right to be confined

---

[6] It is arguable that if certain acts or omissions relating to the processing of inmate grievances interfere with an inmate's constitutional right to access the courts, a colorable claim may be stated. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Moore has failed to show that defendants' alleged denial of his access to ARP forms while on MCIJ segregation impeded his access to the courts.

[7] In his opposition, Moore complains that Warden Corcoran retaliated against him for filing this suit. The complaint, however, did not pre-date his transfer from MCIJ to WCI. It is therefore difficult to give credence to Moore's claim, given Corcoran's apparent lack of advance notice of the complaint.

8

at a particular correctional facility or to demand to be housed in one prison versus another. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING defendants' motion for summary judgment (ECF No. 18) and ENTERING judgment in favor of defendants and against Moore.[8]

DATED this 27 day of January, 2014.

BY THE COURT:

James K. Bredar
United States District Judge

---

[8] In light of Moore's failure to demonstrate constitutional violations, the court sees no need to examine defendants' respondeat superior and qualified or quasi-judicial immunity arguments.

9